LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a denial of a petition for writ of error coram nobis, which sought relief from a judgment of conviction and sentence, which was affirmed by this Court after its judgment of reversal on a point not pertinent to the present proceeding had been reversed by the Supreme Court of Alabama. Dillard v. State, Ala.Cr.App., 371 So.2d 946, rev. 371 So.2d 947, on remand, Ala., 371 So.2d 948 (1979).
The lengthy pro se petition gives evidence of considerable study on the part of the petitioner, or someone aiding him, and sets forth in numbered paragraphs each of most, if not almost all, of the grounds upon which post-conviction relief has been held to have been available in the last twenty-five or thirty years. To petitioner’s credit, he supports his separate grounds by apt citations of cases. Not satisfied, however, with his original petition, filed on November 19, 1979, about five months after the affirmance of the judgment by this Court, he filed an amendment to the petition on November 28, 1979, in which he added a number of grounds, including one, with three sub-division paragraphs thereof, not mentioned in the original petition, wherein he expressed grievance against the attorney representing him on the trial for his failure to “protest the jury venire of both the grand, and petit jurys selection process” of the county where he was tried. This ground, as well as other grounds of his petition as amended, was not mentioned in the hearing of the petition and is not presented as an issue on appeal.
In due course, an attorney was appointed for petitioner, arrangements were made for petitioner’s attendance on a hearing and the proceeding was set for hearing, which commenced and was concluded on June 11, 1980, at which time the court took the matter under advisement until July 14, 1980, and then rendered an order and judgment denying the petition.
Issues on the hearing and on appeal relate chiefly to evidence on the trial, as supplemented on the coram nobis hearing, as to petitioner’s being under the influence of drugs at the time of a confession, or a series of incriminating statements, by him, which were introduced in evidence on the trial of the case over the objection of defendant’s attorney.
Two issues are expressly presented on appeal. As stated by appellant, the first issue is: “Was the appellant’s confession involuntary as being drug-induced?” The issue as to the admissibility of the confession and incriminating statements was specifically discussed and definitely determined adversely to petitioner in the opinion after remand in Dillard v. State, supra, at 371 So.2d 949 as follows:
“... [W]e have reviewed the entire record and find that there was a proper Miranda warning given to the appellant, and, likewise, a proper voluntariness predicate laid before the admission of his confession. Lewis v. State, 57 Ala.App. 545, 329 So.2d 596 (1975) and authorities cited, affirmed, 295 Ala. 350, 329 So.2d 599.”
The transcript of the evidence in Dillard v. State, was introduced in evidence on the hearing of the coram nobis proceeding, which the writer has read. It is to be *913 observed therein that, although on the cor-am nobis hearing some evidence was introduced on the subject in addition to that introduced on the trial, the contention was stoutly pressed during the trial that defendant was under the influence of drugs at the time of the confession and incriminating statements, and there was evidence on the trial to support that contention. The defendant testified positively that a short while before he made the first of his series of confessions or incriminating statements he had taken “thirty-six sleeping pills and thirty-four dope pills, which a doctor has prescribed for him,” and which he obtained from a pharmacist the day before. There was a lengthy in camera interrogation of the defendant and one of the officers testifying as to the confession and incriminating statements, consisting of forty-five transcript pages and concluding as follows:
“THE COURT: I’m going to deny your motion to suppress the evidence and find that the statement was voluntary and he was adequately apprised of his Constitutional rights, that he did not waive his rights and that at the time that he made the statement he was not under such an influence of drugs or chemicals or narcotics as to make such an impairment of the will and mind as to make him unconscious of the meaning of his words. So, any statements will be admissible.
“MR. HUGHES: All right. We reverse an exception.”
It was also shown in evidence on the trial that soon after his confession and his going with the officers and pointing out to them in detail the place where he shot and buried the alleged victim, he was returned to the jail but before retiring for the night he was sent to a hospital and the contents of his stomach were pumped out.
The only addition to the evidence on the subject presented on the hearing of the coram nobis petition was that of the definite identification of the drugs as “36 Tranxene 2214 milligrams tablets” and “36 Valium 5 milligrams tablets” and an affidavit of a physician as follows:
“That I am familiar with the drug Tranx-ene 22'/2 Milligrams and the effect it has on a particular person. I have prescribed Tranxene 2214 Milligrams many times during the course of my practice of medicine. Tranxene is a tranquilizer and Tranxene 22V2 Milligrams is the strongest dosage of said drug. Such drug relaxes a person and slows his reflexes and reaction time. I would not prescribe over one capsule a day.
“That in my professional opinion, if a person took thirty-four (34) Tranxene 3314 Milligrams capsules within a 24 hour period, it would cloud his consciousness and he would be very drowsy. He would not be coherent and could not make an intelligent decision. Such drug taken in said amount would take effect within three hours.”
This additional information furnished by the evidence on the coram nobis proceeding furnishes the basis for appellant’s only other contention, e. g., that appellant’s counsel on his trial was “constitutionally ineffective for his failure to introduce evidence that appellant had filled prescriptions for drugs and for his failure to introduce evidence as to the name of the drugs and their effect.” Apparently anticipating an opposing contention that such evidence would have been merely cumulative, which does not afford a ground for coram nobis relief (Mains v. State, Ala.Cr.App., 375 So.2d 1299, 1301 (1979)), he attempts to distinguish this evidence from the evidence held to have been cumulative in Mains by saying that the evidence presented on the coram nobis hearing in the instant case “was not cumulative but critically essential to Appellant’s case.” Without attempting a dissertation upon whether the particular evidence constitutes “cumulative evidence” merely, we pay due respect to what authorities have said on the subject as readily found in 10A Words and Phrases, pp. 404 — 413, but are unable to conclude that the evidence was “critically essential” to appellant’s case. Even if viewing it retrospectively we would so consider it, which we do not, the failure to show it on the trial would not entitle appellant to coram nobis relief unless he was thereby *914 deprived of the effective representation by counsel to which he was constitutionally entitled. This issue was widely opened on the hearing, in which appellant’s trial attorney testified and was thoroughly interrogated by both parties on the particular point. He was an experienced attorney, an experienced trial advocate, whose ability was not challenged. He made it clear that in his own mind he was fully justified in not endeavoring to supplement the evidence presented on the trial by the particular evidence supplied on the coram nobis hearing.
In our view, the additional evidence supplied on the coram nobis hearing would have likely injured the defendant as much as, if not more than, it would have helped him, for the reason that it would have tended to show, even more strongly than the evidence on the trial, that defendant did not in fact swallow the drugs in the quantity he claimed.
According to the affidavit of the physician, he “would not be coherent.” The testimony of the defendant furnished some evidence that his mind had become blank on the occasion of his initial confession or incriminating statement. However, there was no evidence that he was incoherent at the time. The evidence was exactly the opposite, that he was coherent. The testimony of the officer who primarily took his statement was as follows:
“Q. How long did you observe him on that occasion?
“A. For about an hour.
“Q. Will you describe — how was his speech; was it slurred or what?
“A. He talked just like he’d been talking [the witness had talked with him a number of times during the preceding days]. “Q. All the time?
“A. Yes, sir.
“Q. Could tell no difference?
“A. Yes, sir.
“Q. Did what he say make sense?
“A. Yes, sir.
“Q. Did you observe anything abnormal at that time about your previous conversations with him?
“A. About his conversation?
“Q. Yes.
“A. No, sir.
“Q. In your opinion, did you know what he was saying and doing?
“A. Yes, sir.
“Q. How long did you talk with him there?
“A. That evening?
“Q. Yes.
“A. About an hour there.
“Q. All right. Where did you go from there?
“A. We went to Bell wood.
“Q. All right. And what happened at Bellwood?
“A. He directed us into where he said we’d find what he was looking for.”
The witness then narrated a long and tortuous journey into the woods where defendant pointed out to the officers where he had shot and afterwards buried John Dewayne Smith, the alleged victim.
Appellant is justly entitled to make much of the evidence both on the trial and on the hearing of the coram nobis petition as to his staggering like drunk, his drowsiness, his yawning and his sleepiness. These were offset, however, by the clarity of his mind, his ability to express himself clearly, to tell unambiguously what had occurred, to dexterously lead the officers and explain to them in detail how he had killed his former friend and had tried to dispose of his body.
Defendant was the only witness who testified for the defense on the trial. There was considerable vagueness about his testimony, but he admitted therein that John Smith was killed by being shot by a pistol about two weeks before his confession while the two were together in the woods at the place where Smith’s body was found. He related that some disagreement had arisen between them as to the victim’s apparent courtship of defendant’s former wife. He said he went with Smith to the woods in search of some marijuana, at the suggestion of the victim. While there, they had a confrontation with regard to the victim’s *915 dating defendant’s former wife. They were laughing at times. Then, continued the defendant in his testimony:
“A. John. And he kept on [arguing] and I said, ‘You keep on now,’ I said, ‘We’re going to be fighting.’ I said, ‘I’m going to knock the _ out of you.’ Well, about that time, he pulled a pistol out. And before he could get it out all the way — it was out all the way but before he could raise it up and aim it, I jumped him. And we fought for a few minutes and the gun went off and I got up and I looked down at him and I shook him and I said, ‘John.’ And he didn’t say nothing and I shook him again and I said, ‘John.’ So, I took off running to my car. And I got to my car and stayed there for a few minutes and put the pistol in my pocket. And then I started my car up and—
“Q. All right. Now, excuse me. Now, you had the pistol at that time?
“A. Yes.
“Q. Do you know when and how you got the pistol?
“A. I don’t remember when I got it, no.”
The transcript of the proceedings on the trial of the case discloses that the trial court charged the jury fully on the issue as to defendant’s guilt of murder in the first degree, murder in the second degree, manslaughter in the first degree and manslaughter in the second degree, and on the defense of self-defense.
The same judge presided on the trial and on the hearing on the coram nobis proceeding. He had the benefit of observing the witnesses on both trials. He had a better opportunity than we to determine whether defendant was telling the truth when he testified in effect that shortly before the occasion of his initial confession he had swallowed the quantity of drugs claimed. We have no reasonable basis for disagreeing with the conclusion reached by the trial court, and its judgment should be affirmed.
It should be said on behalf of appellant that out of all the shocking evil, with its tragic consequences, that seethes throughout the record in this case, there is now a beam of apparent contrition in a letter that petitioner admitted in his testimony he recently wrote the parents of John Smith, in which he said:
“I hope this letter finds you in good spirits and health. The reason I am writing this letter to you is to beg you to forgive me for killing your son. I have not only sinned against you but also against God.”
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.